## HARVEY *v.* WATSON.

Where the assignee of an insolvent debtor in another state affirms a sale and delivery of goods made by the insolvent there, shortly before the assignment, to a citizen of this state, a creditor of the insolvent, who claims that the sale was fraudulent as to creditors, may attach the goods here as the property of the insolvent, and the parties may have their rights determined in this state the same as though there had been no assignment.

TROVER, for a stock of goods. Facts agreed. In December, 1884, one C. A. Copps, a resident of the state of New York, sold and delivered the goods in question to the plaintiff, who immediately removed them to Nottingham in this state, where he had them in his possession until February 4, 1885, when they were attached by the defendant, a deputy sheriff, on writs in favor of several Vermont, Massachusetts, and Maine creditors of Copps. Prior to that time—January 14, 1885—Copps had made a valid assignment of his property and effects, under the insolvency laws of New York, for the benefit of his creditors; and the notes given by the plaintiff for a part of the price of the above mentioned goods were included in his schedule of assets, and are now held by the assignee, but have not yet matured.

The defendant claims that the sale by Copps to the plaintiff was fraudulent as against creditors, and that the goods were therefore open to attachment as the property of Copps. The plaintiff claims that the sale was not fraudulent, and that, even if it had been, the assignment passed Copps's title to the assignee as the representative of creditors, and that the assignee alone could attack the sale. The assignee has since filed a written affirmance of the sale by Copps to the plaintiff.

The assignment and all pertinent laws of New York are made part of the case.

*Wm. H. Drury* and *Frink & Batchelder*, for the defendant, cited *Eddy* v. *Winchester*, 60 N. H. 64; *Young* v. *Kimball*, 59 N. H. 449; *Lane* v. *Moore*, 59 N. H. 80; *Towle* v. *Rowe*, 58 N. H. 394; *Ramsey* v. *Fellows*, 58 N. H. 609; *Robinson* v. *Holt*, 39 N. H. 557; *Cook* v. *Gilman*, 34 N. H. 560.

*Wiggin & Fuller*, for the plaintiff. If the creditors who caused the plaintiff's property to be attached had, before the attachment, received the notes given by him to Copps for the purchase-money, and held them as valid claims against the plaintiff, intending to collect them, it is entirely clear that they could not at the same time treat the sale as void and hold the property. The assignee, as representing these and all other creditors of Copps, had received

these notes before the attachment, and he then proposed and still proposes to collect them; and, in response to the notice received from the court, has placed upon its files his election to affirm the sale and treat the notes as valid. It was his right and duty to make the election, and he has made it in such form as to assume the responsibility for it to all the creditors.

The attaching creditors seem to rely upon *Eddy* v. *Winchester*, 60 N. H. 63, *Ramsey* v. *Fellows*, 58 N. H. 607, and other cases, which hold that where an assignee in bankruptcy or insolvency abandons assets of the debtor, the latter or his creditors may avail themselves of those assets, notwithstanding the assignment. But that principle has no application to a case like the present, for here has been no abandonment of assets by the assignee. Instead, the assignee has, in effect, said to the plaintiff, "Keep the goods, and pay the price to me for the creditors. I shall hold you to the bargain you made with my assignor, and enforce the notes you gave to him." This is in no sense an abandonment of assets, but the very reverse—a deliberate choice of the best method of realizing from them. It is, in substance and effect, a sale by the assignee to the plaintiff, in affirmance of the original sale by Copps; and the plaintiff is entitled to hold the goods just as any other purchaser from the assignee would. If the assignee had first reclaimed the goods, and then resold them to the plaintiff, there could be no doubt of the plaintiff's title; and we fail to see how the omission of the ceremony of reclaiming and then reselling can make his title less valid against these creditors, who are in no wise injured by that omission.

*Eddy* v. *Winchester*, 60 N. H. 63, is an authority for saying that the assignee's rights will be recognized by this court. Indeed, it seems to be well settled that this assignment, valid by the law of the debtor's domicile, is valid here against all but our own citizens. *Ferguson* v. *Clifford*, 37 N. H. 96; *Boothby* v. *Plaisted*, 51 N. H. 437; *Corning* v. *Abbott*, 54 N. H. 470; *Stevens* v. *Norris*, 30 N. H. 466; *Hill* v. *Bank*, 45 N. H. 308; *Matter of Waite*, Eastern Reporter, Oct. 24, 1885, p. 56 (N. Y Court of Appeals); *Martin* v. *Potter*, 11 Gray 37; *Whipple* v. *Thayer*, 16 Pick. 25; *Means* v. *Hapgood*, 19 Pick. 105.

If the assignee is recognized here at all, he must have power to decide whether this sale shall be affirmed or disaffirmed. Deeming that he can best serve all creditors of Copps by affirming the sale and collecting the notes, he has decided to do so, and states in his written affirmance, on file in this court, that he "considers the affirmance of the sale to be more for the interest of the creditors of Copps than its disaffirmance would be." But if these attaching creditors of Copps hold the goods and so annul the sale, it is doubtful whether the assignee can maintain a suit on the notes given for the price. *Bailey* v. *Foster*, 9 Pick. 139.

Moreover, to deprive the plaintiff of these goods would in great

measure deprive him of the means of meeting his obligation to the assignee, and so would in effect render the notes worthless, and defeat the assignee's intention of collecting the purchase.price for the benefit of all the creditors. The assignee has now asserted his claim, not to this specific property, but to its proceeds, and is entitled to the aid of this court. These foreign creditors of a foreign debtor are not entitled to call upon a New Hampshire court to give them more than their share of the assets, when the effect must be to prejudice the rights of other creditors, and seriously embarrass the assignee in his efforts to administer the estate for all the creditors, according to the law of the debtor's domicile. None of the debts here sued on were contracted here, and there is no possible injustice or hardship in compelling these creditors to resort for redress, as the other creditors must do, to the courts of New York, where their claims arose, and where alone the estate can be so administered as to do justice to all concerned.

BLODGETT, J. The assignee having affirmed the sale from Copps to the plaintiff, the case stands, as between the latter and the defendant, as if there were no assignment. The right of the assignee to disaffirm the sale and assert his title being personal to himself, the plaintiff cannot exercise the option for him, and set up his title as a bar against the assignor's attaching creditors. Chapter 314, N. Y. Laws of 1858, conferring on an assignee the right to set aside a fraudulent conveyance by the assignor, does not apparently, even in that state, preclude a creditor from bringing an action for that purpose, provided no such action has been brought by the assignee. *Leonard* v. *Clinton*, 26 Hun 288; Burr. Ass. (2d ed.) 352. But however this may be, comity does not require that protection from attachment be extended to property in this jurisdiction which the assignee does not ask to have protected, and which he has abandoned; and the parties to this suit will be left to determine their respective legal rights to such property as if the assignment had not been made. See, generally, *Young* v. *Kimball*, 59 N. H. 446; *Lane* v. *Moore*, 59 N. H. 80; and *Eddy* v. *Winchester*, 60 N. H. 64.

*Case discharged.*

SMITH, J., did not sit: the others concurred.